## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PWG-17-466** |
| | * | |
| **STEPHANIE TWYMAN and** | * | |
| **DEVELL LINCOLN,** | * | |
| | * | |
| **Defendants** | * | |
| | ******* | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS INDICTMENT OR MOTION FOR SEVERANCE

The government opposes defendants Stephanie Twyman and Devell Lincoln's motion to dismiss the indictment or for severance. (Doc. 74, 76). Twyman directed a scheme in which more than $500,000 in fraudulently obtained United States Treasury tax refund checks ("refund checks") were cashed at a check cashing business in Maryland, and is accordingly charged with conspiracy to commit theft of public money, theft of public money, and aggravated identity theft. (Doc. 10). Now, despite acknowledging that the superseding indictment adequately alleges each of the elements of the charged offenses, Twyman asks the Court to dismiss each of the charges against her or to sever her case. (Doc. 74). Lincoln joins Twyman's motion insofar as it applies to the charges against him. (Doc. 76). As Twyman's motion to dismiss is based on a mistaken view of the facts of the case, rather than on the plain language of the indictment, it should be denied in full. Twyman's motion for severance should likewise be denied because Twyman provides no reason why severance is required at this time.

1

## BACKGROUND

On March 28, 2018, Twyman and Lincoln were charged in a superseding indictment with conspiracy to commit theft of public money, theft of public money, and aggravated identity theft. (Doc. 10). The conspiracy charge (Count One) alleges that Twyman, Lincoln, Coconspirator A, Coconspirator B, and others "conspired to file false federal income tax returns with the IRS in the names of purported taxpayers for the purpose of obtaining tax refunds to which the purported taxpayers were not entitled." (Doc. 10 at 2).

Count One alleges that Twyman orchestrated the scheme, which involved the negotiation of more than 100 fraudulently obtained refund checks totaling more than $500,000. (Doc. 10 at 5). In 2011, Twyman recruited Coconspirator B—an employee at a check cashing business—to negotiate fraudulently obtained refund checks for coconspirators. (Doc. 10 at 4). Twyman then directed Lincoln and others to take fraudulently obtained refund checks into the check cashing business where Coconspirator B worked. (Doc. 10 at 3). There, Coconspirator B negotiated the refund checks without requiring identification matching the names of the payees identified on the checks. (Doc. 10 at 3). Twyman then paid Coconspirator B for negotiating the fraudulently obtained refund checks. (Doc. 10 at 5).

In June 2012, Coconspirator B stopped working at the check cashing business, and recruited Coconspirator A to negotiate the refund checks in her place. (Doc. 10 at 5). Twyman continued to orchestrate the scheme, at this point using Coconspirator B as a middle man to schedule times with Coconspirator A when designated coconspirators—including Lincoln—could bring the refund checks into the check cashing business. (Doc. 10 at 5). Coconspirator A would negotiate the refund checks at the designated times without requiring identification matching the

2

names of the listed payees. (Doc. 10 at 3). Then, Twyman would pay Coconspirator B for the negotiation of the fraudulently obtained refund checks and Coconspirator B would share a portion of those proceeds with Coconspirator A. (Doc. 10 at 5). Specifically, on April 8 and April 12, 2013, Twyman paid Coconspirator B for the negotiation of the fraudulently obtained refund checks. (Doc. 10 at 6-7).

Counts Two and Three charge both Twyman and Lincoln with theft of public money based on the negotiation of refund checks as part of the scheme described above. (Doc. 10 at 8-11). Count Two relates to the theft of a fraudulently obtained refund check in the amount of $2,509 and Count Three relates to a fraudulently obtained refund check in the amount of $4,894. (Doc. 10 at 8-11). Counts Six and Seven charge Twyman and Lincoln with aggravated identity theft based on the knowing transfer, possession, and use of the name, purported signature, and social security number of Individual 1 in connection with the thefts of public money alleged in Counts Two and Three. (Doc. 10 at 16-17).

Counts Four and Five charge Lincoln with theft of public money based on his depositing of additional fraudulently obtained refund checks in various bank accounts he controlled. (Doc. 10 at 12-14). Counts Eight and Nine charge Lincoln with aggravated identity theft based on the knowing transfer, possession, and use of the name, purported signature, and social security number of an actual person in connection with the thefts of public money alleged in Counts Four and Five. (Doc. 10 at 18-19).

## ARGUMENT

Defendants move to dismiss certain counts of the superseding indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), contending that the superseding indictment fails to

state an offense. (Doc. 74). To warrant dismissal, Defendants move prove that, even taking all of

the allegations in the superseding indictment as true, the superseding indictment fails to state an

offense. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). To sufficiently charge an

offense, "[a]n indictment must contain the elements of the offense charged, fairly inform a

defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future

prosecution for the same offense." *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992).

Defendants concede that the government "has adequately recited the statutory elements of each

charge," but argue that the superseding indictment fails to fairly inform them of the charges. (Doc.

74 at 2). An indictment fairly informs a defendant of the charges where it contains a statement of

the essential facts underlying the charged offenses. *United States v. Perry*, 757 F.3d 166, 171-72

(4th Cir. 2014). As discussed more fully below, each of the counts in the superseding indictment

sufficiently informs Defendants of the charges against them.

I.        ***The Superseding Indictment Sufficiently Alleges Thefts of Public Money***

A theft of public money charge has four elements: (1) the defendant knowingly stole or

caused the theft of money or a thing of value for their own use or the use of another; (2) the money

or thing of value belonged to the United States government; (3) the money or thing of value had

value exceeding $1,000; and (4) the defendant acted knowingly and willfully with the intent to

deprive the government of the use and benefit of the money. *United States v. Landersman*, 886

F.3d 393, 409 (4th Cir. 2018). An indictment's charge of theft of public money is sufficient where

it tracks the statutory language of Title 18, United States Code, Section 641 and advises the

defendant of "the kind and source of the funds [converted] and the time during which the alleged

offense[ ] took place." *United States v. Wharton*, 840 F.3d 163, 165 n.1 (4th Cir. 2016).

Each theft of public money charge in the superseding indictment provides considerable detail about the specific stolen check at issue in that count, including the listed payee, the amount, and the fraudulent tax return to which the check related, as well as the date and location of the check's negotiation. For example, Count Two alleges the theft on or about April 5, 2013 of a $2,509 United States Treasury check made payable to Individual 1, negotiated at a specific check cashing business in Clinton, Maryland. (Doc. 10 at 8-9). Accordingly, the superseding indictment advises Twyman and Lincoln of the kind and source of the funds stolen and the date and location of the offense, as required. *See Wharton*, 840 F.3d at 165 n.1. Twyman's own filing makes it clear that the defendants are fairly informed of the charges, as Exhibit A to that filing includes the specific checks at issue in Counts Two and Three. (Doc. 74-2).

Twyman appears to make three arguments for the insufficiency of the theft of public money charges. First, Twyman contends the money was not converted "for her own use." (Doc. 74 at 9). As a factual matter, this is incorrect, as the superseding indictment alleges Twyman and Lincoln both converted the public money for their own use.[1] (Doc. 10 at 8, 10, 13, 15). Moreover, the plain language of Section 641 makes it clear that a defendant is guilty whether the thing of value is stolen or converted for the defendant's own use "or the use of another . . . ." 18 U.S.C. § 641. Accordingly, the Fourth Circuit has upheld convictions under Section 641 where, for example, a defendant caused public money to be used to enrich his boss's brother. *Landersman*, 886 F.3d at 410. As the superseding indictment sufficiently alleges that the defendants converted the public money to their own use and the use of another, Twyman's argument fails.

---

[1] The evidence at trial will show that both defendants profited from their roles in the scheme.

Second, Twyman contends that the superseding indictment is insufficient because it does not specifically allege she committed every act in the scheme, including failing to allege that she personally negotiated the checks at issue.[2] (Doc. 74 at 9-10). The superseding indictment does not allege that Twyman executed the scheme on her own, instead plainly laying out her role in the conspiracy: orchestrating the cashing of checks, including the checks at issue in Counts Two and Three. (Doc. 10 at 3). Twyman sent Lincoln to the check cashing business to cash checks, and directed Coconspirators A and B to negotiate the checks for Lincoln and other coconspirators who lacked identification matching the names of the payees of the checks. (Doc. 10 at 3). In other words, while Twyman was not physically in the check cashing store at the time of the checks' negotiation, she commanded and induced the cashing of the checks, and is accordingly punishable as a principal for the offense. 18 U.S.C. § 2. Further, under *Pinkerton v. United States*, 328 U.S. 640 (1946) and its progeny, both defendants are liable for substantive offenses committed by their coconspirators that were reasonably foreseeable and in furtherance of the conspiracy. *United States v. Blackman*, 746 F.3d 137, 141 (4th Cir. 2014).[3] As such, even if they neither directly negotiated the checks at issue nor aided and abetted in the negotiation, both Lincoln and Twyman are liable for the theft of public money charges in Counts Two and Three under a *Pinkerton* theory.

Third, Twyman contends that the superseding indictment fails to sufficiently allege that she possessed the requisite intent. (Doc. 74 at 10). As discussed above, to violate Section 641, a

---

[2] This argument is inapplicable to Lincoln for Counts Three through Five, since the superseding indictment alleges Lincoln personally deposited or negotiated the checks at issue in those counts. (Doc. 10 at 10-15).
[3] The superseding indictment need not specifically charge a *Pinkerton* theory for a defendant to be properly convicted under such a theory. *Blackman*, 746 F.3d at 141.

defendant must act knowingly and willfully, with the intent to deprive the government of the use and benefit of the public money. *Landersman*, 886 F.3d at 409. An indictment that alleges a defendant violated Section 641 by acting "knowingly" sufficiently alleges specific intent. *United States v. Fogel*, 901 F.2d 23, 25 (4th Cir. 1990). Here, each of the theft of public money charges alleges that the defendants acted "knowingly and willfully . . . with intent to convert [the public money] to their own use and gain . . . ." (*E.g.*, Doc. 10 at 9).

To the extent Twyman seeks facts in the superseding indictment that demonstrate her knowledge that the takings were unlawful, the superseding indictment alleges that Twyman directed check cashing business employees to negotiate fraudulently obtained refund checks for persons lacking identification matching the names of the listed payees, and that Lincoln negotiated some of those fraudulently obtained checks made out to individuals other than himself. (Doc. 10 at 3). Accordingly, the superseding indictment adequately alleges specific intent.

## II.    *The Conspiracy Charge is Properly Pled*

Charges of conspiracy to commit a substantive offense under Section 371 consist of three elements: (1) two or more people agreed to commit an offense against the United States; (2) the defendant deliberately joined the conspiracy with knowledge of the purpose of the conspiracy; and (3) someone committed an overt act in furtherance of the conspiracy. *United States v. Vinson*, 852 F.3d 333, 352 (4th Cir. 2017). Twyman asserts two bases for dismissal of the conspiracy charge, both of which fail.

First, Twyman contends that the conspiracy charge fails to allege specific intent because the charge relies on the theft of public money charge, which Twyman asserts is inadequately pled. That argument fails because a conspiracy charge does not require the commission of the object

offense, much less that the object offense was ever charged. *United States v. Yearwood*, 518 F.3d 220, 229 (4th Cir. 2008); *cf. Vinson*, 852 F.3d at 352 (listing the elements of a Section 371 offense).

Moreover, even if the conspiracy charge required a properly pled substantive offense, Twyman's argument would still fail because the substantive offenses are adequately charged, as discussed above. The superseding indictment alleges that the defendants intentionally and knowingly conspired and agreed "to commit an offense against the United States, namely the offense of theft of public money," including "by negotiating fraudulently obtained U.S. Treasury tax refund checks, issued based on the filing of false tax returns with the IRS." (Doc. 10 at 4). Accordingly, the conspiracy charge adequately charges the defendants' specific intent.

Second, Twyman argues that there "is no evidence that Ms. Twyman reached any agreement with her alleged Coconspirators." (Doc. 74 at 12). A motion to dismiss is not an appropriate time to litigate a dispute regarding the sufficiency of the evidence. *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003). Instead, to warrant dismissal, Twyman must establish that, even if true, the allegations in the indictment would not state an offense. *Engle*, 676 F.3d at 415.

Here, the superseding indictment alleges that Lincoln, Twyman, and others agreed to commit the crime of theft of public money. (Doc. 10 at 4). Twyman recruited Coconspirator B to negotiate fraudulently obtained refund checks for coconspirators at a certain check cashing business. (Doc. 10 at 4). Thereafter, Twyman scheduled times for designated persons to bring the fraudulently obtained checks into the check cashing business and paid Coconspirator B for their negotiation. (Doc. 10 at 4-5). Specifically, Twyman paid Coconspirator B for the negotiation of the fraudulently obtained checks on April 8 and April 12, 2013. (Doc. 10 at 6-7). Lincoln agreed

to be a check casher, bringing the fraudulently obtained checks into the check cashing business and receiving the funds for their negotiation. (Doc. 10 at 5-7). Taking these allegations as true, the superseding indictment charges the defendants with agreeing to steal public money, and therefore states an offense against both Lincoln and Twyman for conspiracy to commit theft of public money.

### III.     *The Charges of Aggravated Identity Theft Are Legally Sufficient*

Aggravated identify theft has four elements: (1) the defendant knowingly transferred, possessed, or used the means of identification of another person; (2) the defendant knew the means of identification belonged to an actual person; (3) the defendant did not have lawful authority to use the means of identification; and (4) the transfer, possession, or use of the means of identification was done during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), including theft of public money in violation of Section 641. 18 U.S.C. § 1028A; *Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009).

Twyman makes three arguments for dismissal of the aggravated identity theft charges, two of which mirror arguments made with respect to the other counts, discussed above. First, Twyman contends the theft of public money charges are insufficiently pled, thus rendering the aggravated identity theft charges insufficient as well. As discussed above, this argument fails because the theft of public money charges are appropriately pled. Twyman's argument further fails because, even if the theft of public money charges were dismissed, there is no requirement that the government charge the predicate felony when charging aggravated identity theft. *United States v. Lopez-Diaz*, 794 F.3d 106, 115 (1st Cir. 2015).

Second, Twyman again contends that she did not personally touch any individuals'

9

identifying information, and argues that the aggravated identity theft charges against her should therefore be dismissed. While the government disputes this factual contention and will present evidence to rebut it at trial, at this stage it is enough to note that she is adequately alleged to have caused the commission of the aggravated identity theft crimes and, in addition, is liable for the crimes under *Pinkerton*. *See, e.g., United States v. Fowler*, 2016 WL 616317, at *8-9 (W.D. Va. Feb. 10, 2016) (denying motion for acquittal on § 1028A charges because defendants could be held liable unde the *Pinkerton* doctrine). Likewise, Lincoln personally transferred, possessed, and used the means of identification of others to negotiate three of the four checks that underlie the theft of public money charges and is liable for the fourth under *Pinkerton*.

Third, Twyman contends that the aggravated identity theft charges in Counts Six and Seven fail because, according to Twyman, no means of identification were used in the negotiation of the checks at issue in those counts. (Doc. 74 at 7-8). A "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name . . . ." 18 U.S.C. § 1028(d)(7). As the Fourth Circuit has explained, the key factor in determining whether something is a means of identification is whether it can be used to identify a specific individual. *United States v. Mitchell*, 518 F.3d 230, 235 (4th Cir. 2008).

In *Mitchell*, using a computer and check writing software, the defendant printed counterfeit personal checks, at least some of which were made out to "Marcus Jackson." *Id.* at 232. The defendant also obtained a fake Georgia driver's license featuring his own photograph but displaying the name Marcus Jackson. *Id.* The defendant then used the checks and fake identification document to purchase merchandise at retail stores before returning the merchandise

for cash. *Id.*

At trial, the government introduced three Georgia driver's licenses, the fake driver's license used by the defendant, a real driver's license in the name of Marcus Deyone Jackson, and a real driver's license in the name of Marcus Jackson. *Id.* Each of the three driver's licenses listed different dates of birth and different street addresses, though the fake driver's license listed the same city and year of birth as the driver's license in the name of Marcus Deyone Jackson. *Id.* The defendant testified that he chose the name Marcus Jackson from a phonebook, and in closing argued that the name, "Marcus Jackson was not sufficiently unique to identify a specific person . . . [and that] other identifiers were needed to identify a specific Marcus Jackson." *Id.* at 233. In response, the government argued that it "only had to prove that a real Marcus Jackson existed, and the evidence showed there were at least two such persons." *Id.*

The Fourth Circuit vacated the conviction. As a starting point, the Court noted that the statute's "overriding requirement is that a means of identification—that is, an identifier or identifiers—must be sufficient to identify a specific individual." *Id.* at 234 (internal quotation marks omitted). Therefore, certain unique information, such as a social security number, which is sufficient alone to identify a specific individual, is a means of identification on its own. *Id.* A name, however "would likely not be sufficiently unique to identify a specific individual because many persons have the same name." *Id.* Accordingly, to constitute a means of identification, a non-unique name would need to be paired with other information that renders it sufficient to identify a specific individual. *Id.*

In *Mitchell*, the evidence showed that two real people named Marcus Jackson had Georgia driver's licenses. *Id.* at 235. However, the fake identification only displayed the name Marcus

Jackson, and "that name used alone did not identify one of the real Marcus Jacksons." *Id.* The

name aside, the street address and date of birth on the defendant's fake identification did not match

those of either of the real individuals named Marcus Jackson. *Id.* at 235-36. In comparing the fake

license to the closest matching real driver's license, the Fourth Circuit observed the following:

> An examination of the two documents, however, reveals substantial differences in the more
> specific details of the non-unique identifiers. To begin with, the names were not exactly
> the same. The false license bore the name Marcus Jackson, but the real license bore the
> name Marcus Deyone Jackson. Both licenses listed East Point, Georgia, as the city of
> residence. The false license, however, did not have anything close to the correct street name
> and address of the real Marcus Deyone Jackson. The false license had the same year of
> birth as that of Marcus Deyone Jackson, but the month and day of birth did not match. In
> addition, the driver's license numbers on the two documents did not match, and the false
> license had a number that had never been issued by the Georgia Department of Driver
> Services. In other words, the one unique identifier on the false license, the license number,
> was wholly fictional.

*Id.* at 235-36. As such, the government could not show that the information on the defendant's

fake licenses could be used to identify a specific individual. *Id.*

Here, Counts Six and Seven both allege that the defendants "knowingly transferred,

possessed and used the name, purported signature, and Social Security number of an actual person"

to commit the crime of theft of public money. (Doc. 10 at 16, 17). An individual's name, purported

signature, and social security number, when combined, are plainly sufficient to identify a specific

person and therefore qualify as a means of identification under Section 1028A. *Mitchell*, 518 F.3d

at 234 (noting that a social security number is "unique and therefore sufficient alone to identify a

specific individual"). Accordingly, the superseding indictment alleges each required element of

aggravated identity theft.

Cognizant of this fact, Twyman ignores entirely the allegations in the superseding

indictment, instead focusing on her view of the facts. (Doc. 74 at 7-8). In doing so, Twyman seeks

to make a two-part attack on the government's ability to prove the first element of the aggravated identity theft charges against her: Twyman contends the only identifying information the defendants transferred, possessed, and used in connection with the relevant thefts of public money was Individual 1's name, and further argues that Individual 1's name alone is not sufficient to qualify as a means of identification under Section 1028A. (Doc. 74 at 7-8). Twyman argues that, like the fake identifications in *Mitchell*, a United States Treasury check doesn't display sufficiently unique information to identify a specific person. (*Id.*). This is wrong on at least three levels. First, Twyman's argument is based on the assumption that the facts alleged in the indictment, that Twyman and Lincoln "knowingly transferred, possessed, and used the name, purported signature, and Social Security number of . . . Individual 1" to commit theft of public money, are not true. (Doc. 10 at 16, 17). Yet, a motion to dismiss is not the appropriate time for resolving factual disputes such as the one Twyman raises. *Wills*, 346 F.3d at 488.[4] Accordingly, her motion should be denied on this basis alone. Second, if the Court looks to the facts of the case, contrary to Twyman's assertions, this case involved the transfer, possession, and use of names, purported signatures, and social security numbers in conjunction with tax returns, in addition to the identifiers apparent from the face of the checks. Third, the checks alone contain substantial information, which are more than sufficient to identify Individual 1 as the person whose identity was stolen in the cashing of the check.

---

[4] A district court "may consider a pretrial motion to dismiss an indictment [based on facts outside the indictment] where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." *United States v. Weaver*, 659 F.3d 353, 355 n. * (4th Cir. 2011). That is not the case here, where the statement of facts in Defendants' motion is incomplete and inaccurate.

The facts of this case show that Individual 1's name, purported signature, and social security number were transferred, possessed, and used at two key stages of the conspiracy, only one of which relates to the physical checks in Individual 1's name. The aggravated identity theft charges in Counts Six and Seven are based on the transfer, possession, and use of identifying information in conjunction with the thefts of public money charged in Counts Two and Three, committed as part of the conspiracy to commit the crime of theft of public money charged in Count One. (Doc. 10). As part of the conspiracy, Lincoln, Twyman, and others agreed "to file false federal income tax returns with the IRS in the names of purported taxpayers for the purpose of obtaining tax refunds to which the purported taxpayers were not entitled." (Doc. 10 at 2). Included among those tax returns filed by Lincoln, Twyman, and their coconspirators were false 2009 and 2011 federal income tax returns filed in the name of Individual 1. (Doc. 10 at 8, 10).[5] In addition to Individual 1's name, the tax returns listed Individual 1's social security number and purported signature. In response to those false tax returns, the IRS issued the checks attached to Twyman's motion, made payable to Individual 1. (Doc. 10 at 8, 10; Doc. 74-2). Defendants then caused the negotiation of the checks made payable to Individual 1, bearing a forged version of Individual 1's signature, at a check cashing business. (Doc. 10 at 8-11). In other words, Individual 1's name, purported signature, and social security number were transferred, possessed, and used during the preparation and submission of the tax returns in Individual 1's name, which was a key step in the theft of public money. A name, purported signature, and social security number, when combined,

---

[5]  The filing of the tax returns is specifically alleged in the theft of public money charges in Counts Two and Three and is incorporated by reference into the aggravated identity theft charges in Counts Six and Seven. (Doc. 10 at 8, 10, 16, 17).

are plainly sufficient to qualify as a means of identification. *See Mitchell*, 518 F.3d at 234.

Even if, as Twyman contends, the government were limited in its proof to the face of the checks at issue, Defendants would still be guilty of aggravated identity theft, as the checks contain sufficient information to identify Individual 1 as the specific individual victimized by the identity theft. Again, the definition of means of identification includes "any name or number that may be used, *alone or in conjunction with any other information*, to identify a specific individual . . . ." 18 U.S.C. § 1028(d)(7) (emphasis added). Here, each of the checks at issue bears a check number. Using a database called the Treasury Check Information System ("TCIS"), the IRS can use the check number to identify the specific individual to whom the refund was issued.[6] Thus, the check number is sufficient to identify the specific individual to whom the check was intended.

The checks at issue also list Individual 1's true name and a purported address at which she resided. Using the name and address listed on a Treasury check, the IRS can pull up the IRS account to which the check was applied. That IRS account includes the name and social security number of the person to whom the check was issued. Accordingly, the name and fake address listed on the checks likewise identify a specific individual, and therefore constitute a means of identification.

Of course, the most obvious identifiers on the check are the name and purported signature of Individual 1. (Doc. 74-2). While *Mitchell* held that a name alone may not be sufficient to identify a specific individual, it did not address the scenario presented by a name plus a forged signature.

---

[6] This analysis is not reliant on the name or address listed on the physical check being correct. For example, if someone alters the name and address listed on a Treasury check after its issuance, the IRS can still identify the initial recipient's name and social security number using TCIS so long as it has the check number.

However, every circuit court to consider the issue has found that a name and forged signature is sufficient to constitute a means of identification, regardless of the name's uniqueness. *United States v. Morel*, 885 F.3d 17, 23 (1st Cir. 2018) (upholding conviction for aggravated identity theft where defendant used a person's name and forged signature to deposit a fraudulently obtained tax refund check); *United States v. Reeves*, 636 F. App'x 350, 355 (6th Cir. 2016) ("Another person's name in the form of a fraudulent signature satisfies the 'means of identification' requirement."); *United States v. Wilson*, 788 F.3d 1298, 1310 (11th Cir. 2015) (holding that use of someone's name and forged signature on a fraudulently obtained tax refund check sufficiently identified a specific individual and therefore qualified as a means of identification); *United States v. Porter*, 745 F.3d 1035, 1043 (10th Cir. 2014) (holding that a forged signature alone qualifies as a means of identification); *United States v. Blixt*, 548 F.3d 882, 886 (9th Cir. 2008) ("forging another's signature constitutes the use of that person's name and thus qualifies as a 'means of identification' under 18 U.S.C. § 1028A."); *cf. United States v. Johnson*, 261 F. App'x 611, 614 (4th Cir. 2008) (finding, in a per curiam opinion where the panel included the author of *Mitchell*, that "use of [the victim]'s name as the signatory on [counterfeit] checks is sufficient to identify a specific individual under" Section 1028A); *United States v. Barnette*, 2015 WL 3879875, at *5 (W.D. Va. June 23, 2015) (finding a name and authentic signature was sufficient to constitute a means of identification).

This result is unsurprising under *Mitchell* because, where an individual forges a signature, they purport to use the name of the specific individual whose signature is required—here the payee listed on the checks—rather than the identity of any and every person with that name. As such, a name and forged signature, as is included on the face of the checks at issue here, is sufficient to

constitute a means of identification.

Finally, Twyman's argument additionally fails because, on the unique facts of this case, the name of the payee alone is sufficient to qualify as a means of identification. In *Mitchell*, the Fourth Circuit held that "a bare name *may not* be sufficiently unique" to identify a specific person. *Mitchell*, 518 F.3d at 235 (emphasis added). As made clear in *Mitchell*, a name alone is insufficient to constitute a means of identification only so long as the name is not sufficiently unique to identify a specific person. *Id.* Here, the government intends to present evidence at trial that, unlike "Marcus Jackson," the individual listed as the payee on the checks at issue has a unique name, thereby qualifying their name as a means of identification even in the absence of any forged signature or social security number.

### IV.   *The Indictment Sufficiently Alleges Aiding and Abetting*

Twyman's argument regarding the aiding and abetting language in the superseding indictment makes little sense. Aiding and abetting liability need not be charged in an indictment. *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010). Nevertheless, Twyman seeks the dismissal of "aiding and abetting charges." (Doc. 74 at 11). Plainly, Twyman could be convicted on the basis of an aiding and abetting theory of liability even if the superseding indictment made no mention of such a theory. *Ashley*, 606 F.3d at 143. Here, the superseding indictment goes far beyond the notice required by law, as it lays out both defendants' roles in the scheme, and specifically alleges violations of Title 18, United States Code, Section 2. (*See generally* Doc. 10). Accordingly, whatever relief Twyman seeks when she asks for the dismissal of aiding and abetting charges should be denied.

### V.    *There is No Basis for Severance*

Twyman alternatively asks for severance, with the lone reason provided being that a joint trial could cause unnecessary delay.[7] (Doc. 74 at 12-14). While courts generally favor joint trials for codefendants in the interest of judicial economy, joinder is especially favored in conspiracy cases. *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012). To warrant severance, a defendant must show that there is a serious risk that a joint trial would compromise a specific trial right they possess. *Id.*

Here, any motion for severance based on the need to avoid undue delay is, at best, premature. Twyman agreed to a July 23, 2019 trial date and agreed that the clock under the Speedy Trial Act would be stopped until that date. (Doc. 65). There is no pending motion to continue that trial date, and it appears that all parties and the Court have, at this time, every intention of proceeding to trial on that date. Twyman nevertheless contends that severance should be granted because she asserts it is unlikely that Lincoln can be tried on July 23, 2019, since he remains in custody in California on state charges.[8] (Doc. 74 at 13). Lincoln has been ably represented by counsel in this case since March 2018, and counsel has been in possession of the bulk of discovery in the case since May 11, 2018. Accordingly, so long as he is released from state custody with sufficient time before trial, there is no reason the trial cannot proceed against both defendants on

---

[7] As Defendants provide no reason why Lincoln's rights would be prejudiced by a joint trial, the sole consideration is whether Twyman's rights would be prejudiced by a joint trial.

[8] In October 2017, a Magistrate Judge in this Court issued a writ commanding the warden of the California detention center in which Lincoln is held to produce Lincoln for an initial appearance in Maryland in December 2017. California has not yet produced Lincoln or released him into federal custody.

July 23, 2019. In any event, as all parties currently plan to proceed to trial on July 23, 2019, there is no proposed delay of the currently scheduled trial date, and therefore no reason to grant the motion to sever at this time.

## **CONCLUSION**

As Defendants concede, the superseding indictment adequately alleges each of the elements of the charged offenses. The superseding indictment additionally provides substantial factual allegations, well in excess of those required to fairly inform Defendants of the charges at issue. Accordingly, Defendants' motion to dismiss should be denied in full. Moreover, as there is no reason for Defendants' cases to be severed, Defendants' motion to sever should be denied.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/ William Guappone
William Guappone
Trial Attorney
Department of Justice, Tax Division

Gregory Bernstein
Assistant United States Attorney

19